**Paul E. RITTS, Appellant,**

v.

**SYNKOLOID COMPANY OF TEXAS and Robert K. Weck, Appellees.**

No. 15463.

Court of Civil Appeals of Texas.

Dallas.

March 13, 1959.

Eldridge, Goggans, Davidson & Silverberg, Dallas, for appellant.

Saner, Jack, Sallinger & Nichols, Dallas, for appellees.

YOUNG, Justice.

This suit was initiated by Synkoloid Company of Texas and Robert K. Weck against defendant Ritts for $961.38 allegedly owing under a written contract of July 21, 1954; defendant in answer denying said liability and in cross-action suing plaintiffs for $3,560.97 claimed as due him under terms of the same contract. On trial to the court, plaintiffs recovered judgment for the sum of $961.38 and the cross-action denied; from which ruling defendant has excepted and appealed.

Nature and background of the controversy to the extent not challenged by appellees will be presented substantially as outlined by appellant.

Robert K. Weck is a resident of Los Angeles, California and the principal shareholder in the Synkoloid Company of California, which corporation now owns the controlling shares in the Synkoloid Company of Texas, a Texas Corporation. Paul E. Ritts is a resident of Dallas County, Texas. In April 1954 Ritts was President of Texas Synkoloid, owning 25% of the total authorized and issued shares of the Corporation; Weck and one Rayburg each owning 37½% of the total shares; the Company being engaged in the business of manufacture and distribution of paint and related products. During the latter part of April 1954, Ritts resigned as President, and 'pursuant to a buy and sell agreement among the three shareholders, Ritts offered his shares to Weck and Rayburg at a price to be determined in accordance with their book value as of April 30, 1954. Weck exercised his option to buy these shares; subsequent negotiations between Weck and Ritts relative to the book value or price per share continuing until July 1954.

In the interim, that is between the latter part of April 1954 and July 1954 and before the parties had agreed upon price, a fire destroyed the building and contents of Texas Synkoloid at Dallas; the casualty occurring on May 23, 1954, while Weck and Ritts were still negotiating over the price per share to be paid for the stock Ritts was selling. On July 21, 1954, Ritts and Weck came to an agreement with respect to price and the sale was consummated for the sum of $27,000, such being determined as book value of the Ritts' shares of stock as of April 30, 1954. On same date, the three, (Ritts, Weck and Rayburg) caused to be prepared a written contract which was collateral to the transaction involving the sale of shares; not purporting to cover the actual sale by Ritts or the purchase by Weck of stock, but ancillary thereto, in that it created certain rights and obligations relative to Federal Income Taxes which could be assessed against or rebated to the Corporation. In material part it provided: "Now, Therefore, for and in consideration of the purchase by Weck of the stock owned by Ritts and the mutual promises herein contained, the parties hereto do agree as follows: 1. The parties agree that in the event the Bureau of Internal Revenue assesses a deficiency against the Synkoloid Company of Texas for its Federal Income Taxes for the years 1950, 1951, 1952 and/or 1953, the parties shall pay such deficiency, together with any penalty and interest due thereon, in the proportion which the capital stock owned by each party as of the 30th day of April, 1954 bears to the outstanding capital stock of said corporation; provided, however, that any deficiency, or part thereof, which is attributable to any bonus paid to any of the parties hereto or any capitalization charge-back for the year 1953, shall not be included in this agreement but such deficiency or portion thereof shall be borne by the Synkoloid Company of Texas. Any rebate recoverable for any of the aforesaid years shall be distributable to the parties as their stock interest appears as of April 30,

1954." Synkoloid was the third party beneficiary under above contract, accepting the benefits and burdens of same by bringing this original action as party-plaintiff.

The operations of Synkoloid for the year ending December 31, 1954 reflected a net operating loss of $17,086.93, sustained because the fire damage of May 22, 1954 was not entirely covered by insurance. In April 1955 Synkoloid caused to be prepared and filed with the Internal Revenue Service an "application for Tentative Carryback Adjustment", Form 1139, representing a claim by the Corporation for a readjustment of 1952 and 1953 federal income taxes previously paid in those years; ground being that said operating loss caused by the fire entitled it to a recomputation of 1952 and 1953 income taxes and in consequence a rebate or refund of a portion of those taxes. Pursuant to this application and claim, the U. S. Treasury Department paid over to the Corporation in August 1955 the total sum of $12,446.17 representing a rebate or refund of Federal Income Taxes as follows: For the year 1952, $8,885.20; for the year 1953, $3,560.97. It is undisputed that Ritts was not informed of above transaction until May 1956.

In late 1955 and early 1956 the Internal Revenue Service audited the books of Synkoloid for the years 1952, 1953 and 1954, determining that the Corporation owed a deficiency assessment of $5,526.93 for the taxable year 1953; the latter through its officers and agents agreeing to correctness of assessment and paying the amount due. Weck then made demand upon Ritts for payment of his ¼ part of this deficiency assessment as per contract, furnishing him with the Revenue Agent's audit for the years 1952 through 1954, which report also revealed the fact that above mentioned 1955 rebate had been obtained by the Corporation; Ritts refusing to pay his part of the deficiency until he had been paid his proportionate part of said refund or rebate. Neither Weck or Rayburg have made outright payments of their portion of said tax deficiency, merely advancing such amount

to the Corporation by way of loan; at such time these two owning in toto the authorized and issued corporate stock of Synkoloid. This suit and cross-action then followed as already stated.

Appellant's points in substance assert (1) failure of consideration to the cause of action of plaintiffs in that Weck has not performed his obligation under the contract of July 21, 1954 by paying to the Corporation his portion of the deficiency assessment; (2) that the deficiency assessment paid by Synkoloid for the year 1953 was only $1,965.96 of which the ¼ part owing by Ritts, if anything, was the sum of $491.-49; (3) the court's error in denying appellant a judgment on his cross-action because he was entitled to his ¼ interest in the Government rebate of Income Taxes to Synkoloid for the years 1952 and 1953 under the contract clause providing that "any rebate recoverable for any of the aforesaid years shall be distributable to the parties hereto as their stock interest appears as of April 30, 1954" and (4) in holding that the rebate of federal income taxes received by Synkoloid represented a rebate of 1954 Income Taxes because the Corporation neither owed nor paid any federal income taxes for the year 1954.

There was no failure of consideration as contended; Weck testifying that both he and Rayburg would pay their portion of the 1953 tax deficiency upon demand by the Corporation; these parties owning all shares of stock at the time; the prior loan by them to the Corporation covering their contractual obligations for tax deficiency to be converted into actual payment by mere book entries.

However, we agree with appellant that his part of the deficiency assessment under paragraph 4 of the contract was $491.49 instead of the sum of $961.38—amount of the judgment rendered against him. While Exhibit 2, a statement from the Internal Revenue Service indicates a total tax deficiency for 1953 of $5,526.93, Exhibit 4, offered by plaintiffs, discloses

how this amount was arrived at; being as follows: In 1953 Synkoloid had paid income tax of $31,430.50 as per return. The 1956 Federal audit of same disallowed the Corporation item of $6,104.00 "bad debt expense", resulting in a total income and excess profit tax for that year of $33,396.46, or an increase of $1,965.96. Along with this, the Government required the Corporation to *return* the sum of $3,560.97 theretofore paid, under its application for tentative carryback adjustment, Form 1139. These sums taken together amount to $5,526.93 total tax deficiency; of which only $1,965.96 was *increased 1954 income tax;* a ¼ part due from Ritts being $491.49.

■ Now to be considered is defendant's cross-action; Ritts claiming to be entitled to judgment for a ¼ part of the $8,885.20, representing the 1952 refund to the Corporation because of its net operating loss in 1954 of $17,086.93; the contract reciting that "any rebate recoverable for any of aforesaid years (1950, 1951, 1952, 1953) shall be distributable to the parties hereto as their stock interest appears as of April 30, 1954." The trial court denied such cross-action; and properly so, says appellee in counterpoint, because "the rebate of Federal Income Taxes received by the Synkoloid Company of Texas was a rebate recoverable *for the year 1954,* and the cross-plaintiff Paul E. Ritts was not entitled to receive a proportionate part of such rebate." (Emphasis ours.) In this connection, appellees call attention to the fact that as a result of the fire appellant Ritts sustained no loss or damage, nor did he then own any interest in the Corporation which he had not contracted to sell to Weck for a consideration determined by value of the stock prior to the fire; at the time of the application for rebate owning no interest in the Corporation and having been paid for his stock; and arguing that "the procedure required to be followed by the Internal Revenue Service in adjusting such rebate would not and could not change the fact that such rebate was recoverable for the year 1954 since the fire occurred in

1954, and the fact that there was a net operating loss for 1954 was not determined until after December 31, 1954, when it was ascertained whether or not the company made a profit for that year."

But from further undisputed facts, it would appear rather conclusively that appellant's third and fourth points should be sustained. In the first place, there was no 1954 taxable income to which the operating loss for that year could apply; (2) the meaning and effect of a net operating loss carryback or deduction (Section 172, Internal Revenue Code, 26 U.S.C.A. § 172, headed "Net operating loss deduction") is explained in Volume 2 of the 1958 Edition of Standard Federal Tax Reporter, paragraph 1900, page 25,005, Commerce Clearing House, Inc., as follows: "Ordinarily taxable income is determined on the basis of an annual accounting period. That is to say, the income items, deductions, etc. must be totaled as of the end of the taxable year. If at this time the deductions exceed the gross income, the excess may not, as a matter of right in every case, be applied against income of another year. However, a special provision permits the application of such excess against the income of other years in case the loss was incurred in trade or business, *or from a casualty loss.* * * * Losses from the operation of a business can be carried back to the two years immediately preceding the loss year. If not entirely used to offset income in those years, a loss can be carried forward for as many as five years succeeding the loss year. * * * *A net operating loss, when carried back or carried forward, becomes the 'net operating loss deduction' for the year to which carried.* If the loss is not used up in the year to which it is carried, the income for that year must also be adjusted to determine how much of the loss remains to be carried to another year." (Emphasis supplied); and (3) in its application for tentative carryback adjustment Synkoloid sought and received a decrease of 1952–53 Income Taxes. Under above emphasized language of the Federal Tax

Reporter the result was a rebate of taxes for the years to which the 1954 operating loss deduction was made to apply. Such was the testimony of Mr. Weck in effect on cross-examination. Also in Exhibit 2 Audit Report, Internal Revenue Agent, appears the statement: "The Corporation had a net operating loss in 1954 and filed Form #1139 application for tentative carryback adjustment to 1952 and 1953, and *the amounts claimed were refunded."* (Emphasis ours.) As appellant aptly states "the event which caused the rebate was a 1954 occurrence; the result it produced, to-wit, a rebate, was a 1952 and 1953 occurrence. Appellees have attempted to convert the event which caused the rebate into the end product itself, namely, the rebate. This is the same error which was made by the trial court."

The judgment under review is accordingly reversed and set aside. Judgment is here rendered for appellant in the sum of $2,221.30, less his contractual tax liability of $491.49; or a judgment in the net amount of $1,729.81 with interest at 6% per annum from August 12, 1955 (date the Corporation received its rebate of $8,885.20) until paid.

Reversed and rendered.